# Wytheville.

NOTTINGHAM COAL & ICE CO. v. PREAS.

JUNE 16, 1904.

1. DAMAGES—*Failure of Manufacturer to Deliver Ice to Dealer.*—If a manufacturer of ice fails to fulfill his contract to deliver ice to a dealer who has customers to whom he has been in the habit of furnishing ice, but who has no actual contract for the resale of the ice to any one, the measure of damages to which the dealer is entitled is the difference between the contract price and the market price at the time and place of delivery. If there is no market at the place of delivery, then the difference between the contract price and the value in the nearest and most available market to which the buyer must resort to supply himself, with the cost of transportation added, together with compensation for the time, trouble, and expense of making the repurchase, is the measure of damages.

2. DAMAGES—*Sale of Goods—Failure to Deliver—Repurchase.*—In order to entitle a buyer to recover as damages the difference between the market price and the contract price at the time and place of delivery, it is not necessary that he should have actually gone into the market and bought other goods to supply the place of those not delivered.

Error to a judgment of the Circuit Court of the city of Roanoke in an action of *assumpsit,* wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Watts, Robertson & Robertson,* and *Cocke & Glasgow,* for the plaintiff in error.

*Smeltzer V. Kemp* and *Scott & Staples,* for the defendant in error.

Buchanan, J., delivered the opinion of the court.

On the 2d day of March, 1900, the Nottingham Coal and Ice Company, an ice manufacturer in the city of Roanoke, and R. A. Preas, an ice dealer in Bedford City, entered into a contract by which the former agreed to sell, and the latter to purchase, all the ice which she might need for her purposes in Bedford City during the season of 1900, at the price of $3.50 per ton of 2,000 pounds on board the cars at Roanoke City.   Both parties complied with the terms of their agreement until about the middle of July, when the Ice Company failed to furnish all the ice ordered, and finally, after some correspondence, ceased to furnish it at all, and Mrs. Preas, not being able to get ice from the Ice Company, quit the business and instituted this action in December, 1900, after the ice season had closed, to recover damages for her losses by reason of the Ice Company's failure to keep and perform its contract.

The question involved here is the measure of the plaintiff's damages.   That question was attempted to be raised by demurrer to the declaration, and was raised by objections to evidence introduced, by instructions given and refused, and upon a motion to set aside the verdict of the jury.

The court sustained the demurrer to the 4th count of the declaration, and overruled it as to the other three counts.   No question is made as to the action of the court in sustaining the demurrer to the fourth count, and as the first, second and third counts each averred sufficient facts to entitle the plaintiff to some damages, nominal at least, the demurrer was properly overruled.

The plaintiff's counsel contends that this case does not come within the general rule, that the measure of damages is the difference between the contract price and the market price of the goods at the time and place of delivery, because, at the time the contract was entered into, the Ice Company knew that the plaintiff was purchasing the ice for sale in Bedford City, where she had been engaged in the retail ice business for some years, and had regular customers, and because there was no ice market at Bedford City upon which she could purchase ice upon the failure of the Ice Company to furnish her ice according to the contract.

The evidence shows that the plaintiff had been in the retail ice business at Bedford City for some years, and that she had customers who were in the habit of purchasing ice from her, and that there was no market at Bedford City at which she could purchase the ice required for her business. The evidence further shows that she had no actual contract with any one for the resale of the ice, and it also appears that while ice was in great demand it could be purchased at other points, especially at the city of Alexandria, but at a higher price, at a greater freight rate, and with more loss from melting, as the distance for shipping was much greater.

The case made seems to be the ordinary case of a wholesale dealer or manufacturer failing to furnish to a retail dealer for the purpose of resale, goods which he had agreed to furnish, which can be purchased in the market. There does not seem to be any real difference between this case and that of the miller who buys wheat to grind and furnish to his trade, or the butcher who purchases cattle to furnish beef to his customers, or the merchant who buys goods to sell to those who are in the habit of trading with him. In all such cases, if the wheat, or cattle, or goods, can be purchased in the market, and there has been no resale of them by the vendee, the measure of damages, where the vendor fails to furnish the articles he has contracted to sell,

is the difference between the contract price and the market price at the time and place of delivery. If for any reason there be no market at the place of delivery, then the value in the nearest and most available market to which the buyer must resort in order to supply himself, with the cost of transportation added, together with compensation for the time, trouble and expense of making the repurchase, is the measure of damages. 2 Mechem on Sales, sec. 1742.

In order for the buyer to recover as damages the difference between the market price and contract price at the time and place of delivery, it is not necessary that he should have actually gone into the market and bought other goods to supply the place of those not delivered. It would not advantage the defaulting party, as was said by the Court of Appeals of New York in *Saxe* v. *Penokee Lumber Co.,* 159 N. Y. 371, 54 N. E. Rep. 14, "if he should do so, for if he buys at the market value, the result to the other party is the same as if he simply proved the market value." 2 Mechem on Sales, sec. 1758.

We are of opinion that the measure of damages upon the case made was the difference between the market price and the contract price of ice at the time and place of delivery, and that the trial court erred in not so holding, and for that error its judgment must be reversed, the verdict set aside, and the cause remanded for a new trial, to be had not in conflict with the views expressed in this opinion.

*Reversed.*